**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICKY E. LANE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-02663 SPM |
| | ) | |
| JAY CASSADY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the *pro se* petition of Missouri state prisoner Ricky E.
Lane, Jr. ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The
parties have consented to the jurisdiction of the undersigned United States Magistrate Judge
pursuant to 28 U.S.C. § 636(c)(1). (Doc. 13). For the following reasons, the petition will be denied.

**I.   FACTUAL BACKGROUND**

In March 2013, a jury found Petitioner guilty of two counts of first-degree robbery, in
violation of Mo. Rev. Stat. § 569.020, and two counts of armed criminal action, in violation of
Mo. Rev. Stat. § 571.015. Resp't Ex. D at 82; Resp't Ex. E, at 1-2. In evaluating Petitioner's direct
appeal, the Missouri Court of Appeals summarized the facts related to Petitioner's convictions as
follows:

> On August 15, 2011, Ulunda Maclin (Maclin) was working as a cashier at
> the Family Dollar Store on Natural Bridge in the City of St. Louis. Around 7:00
> pm, [Petitioner] approached the cash register with a bag of chips. [Petitioner] put
> the bag on the counter and gave Maclin one dollar. [Petitioner] asked if he had
> enough money for two bags, and Maclin responded, "sure." [Petitioner] took a
> second bag of chips and placed it on the counter. Maclin "hit total" on the cash
> register and the drawer opened. At this point, [Petitioner] pulled out a long black
> gun and told Maclin "to back up"; she complied. [Petitioner] took money from the

1

cash register and left the store. Maclin called the store manager, who then notified police. Later, Maclin identified [Petitioner] as the man who robbed her.

On August 16, 2011, Tabitha Meriwether (Meriwether) was working as a cashier at the Family Dollar Store on Martin Luther King Drive in the City of St. Louis. Around 5:00 pm, [Petitioner] approached the cash register with a bag of sunflower seeds. Meriwether scanned the item and told [Petitioner] the price. [Petitioner] gave Meriwether the money, and she opened the cash register. [Petitioner] pulled out a black automatic gun, and Meriwether stepped back. [Petitioner] took $190 and ran toward the door. Later, Meriwether identified [Petitioner] as the man who robbed her.

During the robbery of Meriwether, Paul Lovelace (Lovelace), the store manager, was sitting behind the register when he heard the drawer fall. Lovelace stood up and looked. He saw [Petitioner] move away from the register and take off running towards the door. Lovelace chased [Petitioner] toward the front of the store. [Petitioner] pulled a gun, pointed it at Lovelace, and told him to "get the fuck back." Lovelace complied.

Police obtained surveillance videos from both Family Dollar store robberies. Police obtained still photographs from the surveillance video from the Family Dollar on Natural Bridge and disseminated them to the public through the media. Detective Tracy Chaney, the investigating officer, also sent a department-wide e-mail to the police officers to see if anyone had interactions with the person on the surveillance video. An officer from Third District identified the robber as [Petitioner]. A crime stopper tip also identified [Petitioner] as the robber.

On August 18, 2011, police placed [Petitioner]'s picture in a photographic line-up where all six of the participants had dreadlocks. Upon viewing the photo spread, all three victims identified [Petitioner] as the robber.

The same day, police arrested [Petitioner]. At his arrest, [Petitioner] had a "low" haircut and no longer had dreadlocks. Police included [Petitioner] in a physical line-up where all participants had short shaved hair. Again, all three victims identified [Petitioner] as the robber. At trial, Officer Jerry Leyshock (Officer Leyshock) testified that he knew [Petitioner] since 2005 through his involvement in boxing and later through the 12th and Park Recreation Center where Officer Leyshock was a boxing coach. Officer Leyshock testified that he saw [Petitioner] around the time of the robberies, and that [Petitioner] had dreadlocks. Officer Leyshock also testified that he viewed both surveillance videos and that he was certain the identity of the robber on one of the videos was [Petitioner]'s. The second video was not clear enough for Officer Leyshock to identify the robber.

At the close of the State's evidence, [Petitioner] filed a motion for judgment of acquittal, which was denied. [Petitioner] neither testified nor called any witnesses. At the close of all evidence, the jury convicted [Petitioner] on all counts. [Petitioner] waived jury sentencing, and the trial court sentenced him to four concurrent terms of twenty-five years imprisonment.

Resp't Ex. E, at 2-4.

Petitioner filed a direct appeal of his conviction, asserting three points of error: (1) that the trial court erred in failing to grant his motion for judgment of acquittal at the end of the state's case, because the state did not prove beyond a reasonable doubt that Petitioner had used a deadly weapon or dangerous instrument; (2) that the trial court erred in allowing testimony from a particular officer; and (3) that the trial court erred when it allowed pretrial and in-court identifications of Petitioner into evidence. Resp't Ex. B, at 10-12. On March 11, 2014, the Missouri Court of Appeals denied all three points of error and affirmed the judgment of the trial court. Resp't Ex. E.

On August 26, 2014, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Resp't Ex F, at 8-13. Subsequently, acting through counsel, Petitioner filed an amended motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. *Id.* at 21-47. Petitioner asserted one claim of denial of due process based on the trial court's failure to recuse itself sua sponte and four claims of ineffective assistance of trial counsel: (1) failure to move to disqualify the trial judge, (2) failure to properly advise Petitioner about the state's plea offer on the morning of trial; (3) failure to consult with and present testimony from an eyewitness identification expert, and (4) failure to investigate and call a particular detective to testify. *Id.* Petitioner also moved to disqualify the motion court judge, who was the same judge who had presided over Petitioner's criminal case, arguing that the claims presented in the amended motion would require testimony from the judge; that motion was denied. *Id.* at 62, 65. Following an evidentiary hearing, the motion court denied the motion for post-conviction relief. *Id.* at 70-79. Petitioner appealed, asserting only two claims: (1) that the motion court erred when it denied Petitioner's motion for change of judge because the motion judge, who was also the trial judge, was a material witness to Petitioner's claim; and (2) that counsel was ineffective for failing to

move to disqualify the trial judge for extrajudicial bias. Resp't Ex. G, at 14-17. On November 22, 2016, the Missouri Court of Appeals affirmed the judgment of the motion court. Resp't Ex. I.

In the instant petition, Petitioner asserts three claims: (1) that there was no proof beyond a reasonable doubt that Petitioner had or used a deadly weapon or dangerous instrument, as required for the charge of armed criminal action; (2) that trial counsel was ineffective in that trial counsel failed to move to disqualify the trial judge; and (3) that trial counsel was ineffective in that he failed to advise Petitioner properly regarding the state's plea offer on the morning of trial. In his response, Respondent argues that Ground Three is procedurally defaulted and that all three claims are without merit.

## II.   LEGAL STANDARDS

### A.  Legal Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "In the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under the AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court

decision is "contrary to" clearly established Federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state court 'unreasonably applies' Supreme Court precedent if it 'identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Williams*, 529 U.S. at 413). Finally, "[a] state court decision is based on an unreasonable determination of the facts only if the 'court's presumptively correct factual findings do not enjoy support in the record." *Bahtuoh v. Smith*, 855 F.3d 868, 873 (8th Cir. 2017) (quoting *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006)).

### B.  Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

*United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### III.   DISCUSSION

#### A. Ground One: Insufficient Evidence that Plaintiff Had or Used a Deadly Weapon or Dangerous Instrument

In Ground One, Petitioner asserts there was no proof beyond a reasonable doubt that he had or used a deadly weapon or dangerous instrument, as required to support the armed criminal action conviction. He argues that although the state showed that he was armed with something, the State never proved it was a deadly weapon or dangerous instrument. He argues that there was no cocking of a pistol, no shots fired, no sound heard, no shells found, and no one was hurt. He also argues that the state never had a weapon to show as evidence. Petitioner contends that the instrument used could have been something painted to look like a weapon or some material stuffed with cotton to look like a weapon. Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied the claims on the merits. Resp't Ex. E, at 4-5.

In reviewing challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Accord Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S.

at 319. State law defines the specific elements of the crime at issue. *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995). The federal habeas court's scope of review is very limited. The Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted). Furthermore, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker*, 567 U.S. at 43 (quotation marks omitted).

The Missouri Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Although the Missouri Court of Appeals did not refer to the applicable federal law discussed above, the standard it applied was substantively the same:

> When a defendant challenges the sufficiency of the evidence, we accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). We limit our review to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

Resp't Ex. E, at 4. The court went on to articulate the elements of the crime of armed criminal action and to analyze whether the evidence presented at trial satisfied those elements:

> A person commits the crime of armed criminal action if he commits any felony "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Section 571.015. Deadly weapon means "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a  switchblade knife, dagger, billy, blackjack or metal knuckles." Section 556.061(10). The State has no burden to show that the firearm was loaded or operable in order to sustain a conviction for armed criminal action. *State v. Burch*, 939 S.W.2d 525, 529-530 (Mo. App. W.D. 1997).
>
> Here, Maclin testified that [Petitioner] drew a long black gun and told her to "back up," which Maclin did because she feared she might get shot. Meriwether

7

testified that [Petitioner] pulled out a black automatic gun and took the money from the cash register. Lovelace testified that [Petitioner] pulled out a semi-automatic revolver and told him, "get the fuck back." The jury viewed the surveillance tapes from both robberies.

Whether there is sufficient evidence to support a conviction is not an assessment of whether the Court believes that the evidence at trial establishes guilt beyond a reasonable doubt, but rather a question of whether, viewing the evidence in the light most favorable to the State, a rational fact-finder could find the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc 2012). Here, based on the fact that [Petitioner] used a gun to threaten the victims, the jury could have reasonably inferred that the gun was a "deadly weapon." There was sufficient evidence to support [Petitioner]'s armed criminal action convictions.

*Id.* at 4-5.

The Missouri Court of Appeals' analysis was consistent with *Jackson* and the other federal cases discussed above, and its conclusion is well supported by the record. A review of the trial transcript supports the state court's finding that the evidence in the record was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that committed first degree robbery "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon," as required by Section 571.015. The victim of the first robbery, Maclin, testified at trial that as she was helping Petitioner buy chips at the counter, he "came out with" a "long black gun," placed the gun on the counter, and told her to back up from the counter; that she backed up because she did not know if he was going to shoot her. Resp't Ex. A, at 191-93, 217-18. She also testified that she and Petitioner were within arms' reach of each other and that the lights in the store were bright. *Id.* at 193-94. Both victims of the second robbery, Meriweather and Lovelace, also testified that they saw Petitioner using a gun. Meriweather testified that as she was ringing up some sunflower seeds for Petitioner, he began grabbing money out of the register, pulled a black gun out, and set it on the counter without taking his hand off of it. *Id.* at 225-26, 229. She guessed it was an automatic but was not sure. *Id.* at 226. Like Maclin, Meriweather testified that she and Petitioner

were within arms' reach of each other and that it was bright in the store. *Id.* at 228. The store manager at Meriweather's store, Lovelace, testified that after he chased Petitioner, Petitioner pulled a gun and pointed it at Lovelace's face. Lovelace testified that he is "a little bit" familiar with weapons and knows the difference between a semi-automatic and a revolver. *Id.* at 275. He testified that the gun was a semi-automatic weapon and was "maybe a 9 mm." *Id.*

Each of the three victims testified that they saw Petitioner with a gun, that they observed the gun at close range and in good lighting, and that Petitioner threatened them with the gun during a robbery. No evidence was presented to suggest that the object they saw was something other than a gun. Even without the introduction of a gun into evidence, it was entirely reasonable for the state court to find that the testimony of these witnesses, combined with the fact that the jury had the opportunity to view the surveillance videos from both robberies, was sufficient for a reasonable juror to conclude beyond a reasonable doubt that Petitioner used a deadly weapon in committing both robberies.

Because the Missouri Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, Petitioner is not entitled to relief on Ground One.

### B.  Ground Two: Ineffective Assistance of Trial Counsel—Failure to Move to Disqualify the Trial Judge

In Ground Two, Petitioner argues that his trial counsel was ineffective in that he failed to move to disqualify the trial judge. Petitioner alleges that trial counsel heard the judge state that he would sentence Petitioner to no less than twenty-five years if he was found guilty after a jury trial and that trial counsel reported to Petitioner that the judge was out "to get" Petitioner because of favorable dispositions Petitioner had received in prior cases. Petitioner raised this claim in his

amended motion for post-conviction relief, and the motion court held a hearing on the motion. Resp't Ex. J.

At the hearing before the motion court, Petitioner testified that he had previously had four cases where he was represented by his trial counsel; three of them were dismissed, and in one he was found not guilty. *Id.* at 24-25. He testified that when his trial counsel told him about a possible eighteen-year plea deal in the case at issue here, his trial counsel told him that if he did not take the plea and lost at trial, the judge had said that he would give him no less than twenty-five years. *Id.* at 25-26. He testified that his trial counsel told him that "they" had been out to get him since 2006, when he first started catching cases, and that "basically, that the Judge had it in for [him]". *Id.* at 26. Trial counsel testified that he told Petitioner that if he went to trial, the judge was saying he would consider a twenty-five year sentence. *Id.* at 31. Trial counsel did not recall specifically telling Petitioner that the Court had it out for him because he had had so many cases dismissed, but he testified that he would have told Petitioner that the judge knew his prior history and that the state would have brought the prior cases to the judge's attention. *Id.* at 32. Trial counsel also testified that Petitioner chose to go to trial and waived jury sentencing. *Id.* 34.

The motion court denied the motion, finding that the evidence presented did not show a bias on the part of the trial court and did not provide a basis for a motion to disqualify. Resp't Ex. F, at 74-78. On appeal, the Missouri Court of Appeals affirmed the decision of the motion court. Resp't Ex. I, at 8-12.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr.*

*Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In assessing the merits of Petitioner's claim, the Missouri Court of Appeals recognized the applicable two-prong *Strickland* test for ineffective assistance of counsel. Resp't Ex. I, at 9. The court then affirmed the finding of the motion court that Petitioner had not proven, by a preponderance of the evidence, any allegations that would support a finding that counsel was ineffective for failing to move to disqualify the trial judge. *Id.* at 10. The court noted that under

Missouri law, "a disqualifying bias or prejudice must be one emanating from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learns from participation in the case." *Id.* at 9 (internal quotation marks omitted). The court also noted that, under Missouri law, a trial judge is entitled consider a defendant's criminal history and character in deciding on a sentence. *Id.* at 10. The court found that "[t]he record of the evidentiary hearing reflects that, at most, trial counsel told Movant the trial judge would most likely impose a twenty-five years sentence based on Movant's prior history" and that there was no evidence presented that the trial judge had presided over any of Petitioner's prior cases. *Id.* at 10-11. The court found:

> [Petitioner] has not proven a disqualifying bias or prejudice emanating from an extrajudicial source which resulted in the trial judge having an opinion on the merits on some basis other than what the judge learned from participation in the case. Accordingly, any motion to disqualify the trial judge filed by trial counsel would have been non-meritorious.

*Id.* at 11-12. The court concluded that trial counsel could not be found ineffective for failing to file a non-meritorious motion, and it affirmed the motion court's denial of Petitioner's claim. *Id.* at 12.

The Missouri Court of Appeals' application of *Strickland* was not objectively unreasonable, and its conclusion was supported by the record. At the hearing, Petitioner presented evidence that his counsel thought the trial court was considering or planning to give Petitioner a twenty-five-year sentence if he was found guilty after trial, and that the trial court would have been made aware of Petitioner's prior cases by the state. However, the state court reasonably found that Petitioner had not presented evidence to show that the trial court had a bias or prejudice against Petitioner that was based on any improper considerations, particularly given that Missouri law permits a judge to consider a defendant's character and history in sentencing. Moreover, as Respondent correctly points out, Petitioner's claim that Petitioner and his trial counsel believed the trial judge was biased against him is called into doubt by the fact that Petitioner waived jury

sentencing and elected to have the trial court sentence him. *See* Resp't Ex. A, at 395. If Petitioner had believed that the trial judge was biased against him, it is unclear why he would choose to have the judge sentence him. In light of the absence of evidence of bias, the state court reasonably found that a motion to disqualify would have been without merit, and it reasonably found that trial counsel was not ineffective for failing to file a non-meritorious motion.

For all of the above reasons, Petitioner is not entitled to relief on Ground Two, and Ground Two will be denied.

### C.  Ground Three: Ineffective Assistance of Trial Counsel—Failure to Give Proper Advice Regarding Plea Offer on Morning of Trial

In Ground Three, Petitioner alleges that his trial counsel was ineffective because he failed to give Petitioner proper advice regarding the state's plea offer on the morning of trial. Petitioner alleges that on the morning of trial, trial counsel approached Petitioner and said that the state would agree to eighteen years if Petitioner pleaded guilty. Petitioner thought that because the trial court said it would give him twenty-five years if he was found guilty, then if he pleaded guilty, he would get twenty-five years no matter what.

Respondent argues that this claim has been procedurally defaulted, because although Petitioner raised this claim in his amended motion for post-conviction relief, he did not raise it in his appeal from the denial of that motion. The Court agrees. "Missouri procedure requires that a claim be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (citing *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Id. See also, e.g., Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005) ("Although Osborne raised this failure-to-investigate claim in his Rule 29.15 motion to the state trial court, he did not include this specific ineffectiveness claim in his appeal to the Missouri

Court of Appeals. This claim is now procedurally barred."); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994) ("Several of the specific ineffectiveness claims Flieger raised pursuant to Rule 29.15 were not, after being rejected by the Rule 29.15 court, included in his appeal to the Missouri Court of Appeals. Those claims are now procedurally barred.").

Because this claim has been procedurally defaulted, the Court cannot consider it unless Petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. Petitioner makes no allegations that might show that the default would result in a fundamental miscarriage of justice. In his Reply, Petitioner states that he has no knowledge of the law and "was told that as long as a claim was brought up, the remedies are exhausted." Reply, at 1. Giving this statement its broadest possible reading, Petitioner might be attempting to argue that the default should be excused because it was caused by the ineffectiveness of the attorneys who represented him in his post-conviction appeal. As Respondent argues, however, such an argument would be without merit. Although ineffective assistance of post-conviction counsel may constitute cause for the failure to raise a claim in an initial post-conviction proceeding, *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), ineffective assistance of post-conviction *appellate* counsel does not constitute cause to excuse a state procedural default. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("*Martinez* offers no support, however, for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

Because Ground Three has been procedurally defaulted and Petitioner has not shown either that cause and prejudice exist to excuse the default or that the fundamental miscarriage of justice exception applies, Ground Three must be denied.

## IV.   CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED THAT** Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue, because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

 

 

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2021.